**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————————————— :
:
ANTHONY CALABRESE,                             :         Civil Action No.: 19-12526 (FLW)
:
                              Plaintiff,       :
:                           **OPINION**
         vs.                                   :
:
MICHELLE TIERNEY, *et al.,*                    :
:
                              Defendants.      :
:
———————————————————————————— :

**<u>WOLFSON, Chief Judge</u>:**

Plaintiff Anthony Calabrese ("Plaintiff" or "Calabrese") alleges that defendants Joseph

Coronato, Michelle Tierney, Marlene Lynch Ford and Chief Justice Stuart Rabner, in their official

capacities; John Does 1 to 4; Bernardino L. Alvarado ("Alvarado"); and Ocean County (Alvarado

and Ocean County collectively, "Moving Defendants") violated his civil rights.[1]  Plaintiff asserts

violation of both federal and New Jersey state civil rights statutes based on alleged alterations of

his criminal history in regards to a 2012 conviction, and an allegedly retaliatory motor vehicle stop

occurring in July 2018.  Alvarado moved to dismiss Plaintiff's claims under Federal Rule of Civil

---

[1]      Defendants Michelle Tierney, Joseph Coronato, Marlene Lynch Ford, and Chief Justice
Stuart Rabner have not yet filed an appearance in this matter and have not joined in either motion.
However, Plaintiff has not filed a proof of summons, and thus, it appears that these defendants
have not been served. Accordingly, Plaintiff is directed to show cause, within forty-five days, why
the claims against these defendants should not be dismissed for lack of service. Additionally, the
only claims against these defendants are Counts 1-3 of the Complaint which, as explained *infra*,
are barred by the statute of limitations. Thus, the claims against these defendants may be subject
to dismissal.

Procedure 12(b)(6), and Ocean County filed a motion for summary judgement in lieu of an answer, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes both motions.[2] For the reasons set forth below, Counts One, Two, and Three, Plaintiff's claims stemming from the error in his criminal history, are barred by the statute of limitations, and dismissed with prejudice against Moving Defendants. Accordingly, summary judgment in favor of Ocean County is **GRANTED** on those counts and Ocean County is dismissed as a defendant. Defendant Alvarado's Motion to Dismiss is **GRANTED IN PART and DENIED in PART.** Counts Eight and Nine, Plaintiff's medical mistreatment claims, are dismissed without prejudice; Counts Four, Five, Six, and Seven, the remaining counts against Alvarado, may proceed.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

The instant lawsuit stems from two separate incidents: alleged alterations of Plaintiff's criminal record and an alleged retaliatory motor vehicle stop in July 2018.

### A.    Plaintiff's Allegedly Altered Criminal Record

On January 27, 2012, Plaintiff, a registered nurse, was arrested by Lacey Township police and issued a municipal court summons for violating various New Jersey statutes related to the

---

[2]     Plaintiff's opposition to Alvarado's motion is not lengthy, as it consists of a two-page letter brief.

[3]     The facts herein are drawn from the allegations in Plaintiff's Compliant and taken as true. Although Ocean County filed a motion for summary judgment, including a statement of material fact as required by the Rule 56, discovery has not yet commenced in this matter, and the facts therein are largely consistent with the version of events outlined in Plaintiff's Complaint. Accordingly, the factual background relies on the Complaint's factual allegations.

possession of controlled substances and drug paraphernalia. [4] *See* ECF No. 4, Am. Compl. ¶¶6,12. On April 11, 2012, Plaintiff was indicted on the following charges by an Ocean County grand jury: 1) a violation of N.J. Stat. Ann. §2C:35-10(a)(3) for possessing more than 50 grams of marijuana; 2) a violation of N.J. Stat. Ann. §2C:35- 5(b)(11) for possessing less than five pounds of marijuana with intent to distribute; and 3) a violation of N.J. Stat. Ann. §2C:35- 10(a)(1) for possessing cocaine. *Id*. at ¶7. Thereafter, on August 19, 2013, Plaintiff pled guilty to the second count of the indictment, possession of less than five pounds of marijuana with intent to distribute, pursuant to a plea agreement with the Ocean County Prosecutor's Office. *Id*. at ¶9.

In or around October 2016, Plaintiff received a job offer from a nursing facility, and during the background check for that position, Plaintiff discovered that his criminal record erroneously indicated that he had pled guilty to N.J. Stat. Ann. §2C:35-10(A)(1), possession of meth, heroin and LSD with intent to distribute, rather than marijuana possession. *Id*. at ¶10. Shortly thereafter, Plaintiff was offered another position. *Id*. at ¶11. Both job offers were rescinded after the results of the background check were received. *Id*. at ¶¶12-13.

Plaintiff's attorney contacted the Ocean County vicinage of the New Jersey Superior Court, and informed the judge who had overseen the case of the discrepancy in Plaintiff's criminal history. *Id*. at ¶15. The next day, a "Change of Judgement of Conviction" was generated, which was purportedly intended to fix the error. *Id*. at. ¶16. Although the "Change of Judgement of Conviction" remedied the error as to the ultimate charge to which Plaintiff pled, Plaintiff alleges that it did not fully address his concerns, because the amended Judgement of Conviction

---

[4]     Plaintiff's Complaint purports to reference various exhibits, such as Plaintiff's municipal court summons, indictment, and judgment of conviction. However, no exhibits were affixed to either the initial complaint or amended complaint.

"erroneously and falsely stated that the original charge against Plaintiff, when arrested in January 2012, was manufacture and/or distribution of 'meth/heroin/LSD.'" *Id.* at ¶16. Plaintiff asserts that the changes to his judgment of conviction could only be made by a person "with access to the Promis/Gavel system," which New Jersey utilizes to track criminal cases. *Id.* at ¶18. Plaintiff asserts that, to date, his criminal record still falsely reflects an arrest for manufacture and/or distribution of meth/heroin/LSD, even though he "has never been accused, formally or informally, of any offenses involving any CDS other than marijuana." *Id.* at ¶¶26-27.[5]

## B. The Alleged Retaliatory Motor Vehicle Stop

On July 7, 2018, Plaintiff's friend, Michael Claudi ("Claudi"), borrowed Plaintiff's vehicle, and was pulled over by Brick Township police. *Id.* at ¶30. During the motor vehicle stop, the officers discovered that Claudi's license was suspended, therefore, they arrested him and the vehicle was taken to an Exxon gas station.[6] *Id.* at ¶32. There, Plaintiff allegedly observed "Brick Township Detectives, including Defendant Alvarado, around and in the back seat of the truck, ripping and throwing paperwork from his patient files." *Id.* at ¶32.

The next day, after obtaining the keys to the vehicle from the jail, Plaintiff went to retrieve his vehicle from the gas station and discovered that his personal effects had been removed from

---

[5]     Although Plaintiff's Complaint alleges that the error in his criminal record persists to this day, the summary judgment record belies that assertion. In support of its motion for summary judgment, Ocean County has provided the Court with a second change of judgment of conviction, dated May 15, 2018, which remedied the outstanding error. *See* ECF No. 6-1, Ocean County SJ Br., Ex. B. 5/15/15 Judgement of Conviction. In his opposition to that motion, Plaintiff does not dispute the validity of that document and appears to concede that the judgment of conviction was modified in May 2018 to reflect the correct charges.

[6]     It is unclear from the Complaint whether Plaintiff was with Claudi at the time of his arrest, how the vehicle was taken to the Exxon, and how Plaintiff came to discover it was there.

his glove compartment, and many of his patient files and photographs were damaged or destroyed. *Id*. at ¶33. Plaintiff also observed scratches around the exterior of his vehicle and noted that "multiple sterile surgical emergency kits" were missing. *Id*. Later that day, Plaintiff visited the Brick Township police station and filed a written complaint regarding the damage. *Id*. at. ¶35.

On July 11, 2018, a detective from the Brick Police Department Internal Affairs ("IA") unit contacted Plaintiff to discuss the damage. *Id*. at ¶36. The detective informed Plaintiff that the IA unit would finalize its report and contact the town's insurance carrier regarding the scratches on the vehicle. *Id*. A few days later, on July 16, 2018, Plaintiff was driving through Brick on his way to the bank with a friend, when he "observed flashing lights and sirens behind him." *Id*. at ¶37. He pulled over to allow the emergency vehicles to pass, but a police car and two other unmarked cars pulled up behind him. *Id*. Two Brick Township police officers, including Alvarado allegedly "jumped out of the vehicle with guns drawn, demanding that Plaintiff get out of the vehicle." *Id*. When Plaintiff complied, Alvarado supposedly pointed his gun at Plaintiff's head and said "[t]his is what happens when you make an IA complaint." *Id*. Then, Alvarado handcuffed and searched Plaintiff, taking $1,050 from Plaintiff's pocket. *Id*. at ¶38. Alvarado also allegedly took $80 from Plaintiff's companion, as well. *Id*. Plaintiff alleges that the officers repeatedly said, "[y]ou know what this is about." *Id*. at ¶40.

Following the search, Plaintiff was placed under arrest and taken to the Brick police department.[7] *Id*. at ¶41. Once at the police department, Plaintiff supposedly informed the officers

---

[7]     Plaintiff's Complaint does not identify why he was stopped by the police or arrested, however, Plaintiff alleges that he eventually pled guilty to third degree possession of stolen property (a blank prescription form) and fourth degree possession of marijuana with intent to distribute. Am. Compl. ¶44. Presumably, these charges stem from items discovered in Plaintiff's possession during the July 16, 2018 motor vehicle stop.

several times that he was hypoglycemic and felt his blood sugar levels dropping. *Id.* The officers disregarded his complaints and Plaintiff eventually lost consciousness. *Id.* After plaintiff lost consciousness, EMTs were called and Plaintiff was provided with instant glucose which revived him. *Id.* Thereafter, Plaintiff was transported to Ocean Medical Center, allegedly over the officers' objections. *Id.* Once Plaintiff was stable, he was released from the hospital and sent back to the police station. *Id.* From there, he was transported to the Ocean County jail. *Id.* at ¶42. Plaintiff alleges that while incarcerated, he was repeatedly denied bail due to a "prior arrest for indictable offense," and attributes the denial to the alleged alteration of his criminal record. *Id.* at ¶43. On October 26, 2018, Plaintiff plead guilty to charges of third degree possession of stolen property (a blank prescription form) and fourth degree possession of marijuana with intent to distribute. *Id.* at ¶44.

On May 15, 2019, Plaintiff filed the instant lawsuit alleging the following claims against all Defendants, stemming from the alleged falsification of his criminal record: Count 1, Conspiracy to Deprive Plaintiff of Due Process in violation of 42 U.S.C. §1985; Count 2, Denial of Due Process in violation of 42 U.S.C. §1983; Count 3, Denial of Due Process in violation of N.J. Stat. Ann. §10:6-1. Plaintiff also asserts the following claims against Defendant Alvarado and "the John Doe" defendants, stemming from the allegedly retaliatory traffic stop and his treatment while detained in the Brick Township Police Department: Count 4, Denial of Due Process in violation of 42 U.S.C. §1983; Count 5, Denial of Due Process in violation of N.J. Stat. Ann. §10:6-1; Count 6, Violation of Plaintiff's First Amendment Rights, in violation of 42 U.S.C. §1983; Count 7, Violation of Plaintiff's Free Speech Rights, in violation of N.J. Stat. Ann. §10:6-1; Count 8, a Violation of Plaintiff's Eighth Amendment Rights, in violation of 42 U.S.C. §1983; and Count 9,

Violation of the Right to be Free of Cruel and Unusual Punishment, in violation of N.J. Stat. Ann. §10:6-1.

Plaintiff filed an Amended Complaint as a matter of right on May 25, 2019. *See* ECF No. 4. Thereafter, Alvarado filed the instant motion to dismiss, and Ocean County filed the instant motion for summary judgment.[8] After the motions were filed, Plaintiff filed a motion for leave to file a second amended complaint, which was denied by the Magistrate Judge on December 2, 2019. *See* ECF Nos. 10, 17

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's

---

[8]    Ocean County relies on documents outside of the complaint in support of its arguments; accordingly, it appropriately filed a motion for summary judgment in lieu of answer, rather than a motion to dismiss or a motion for a judgment on the pleadings.

entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

### B. <u>Federal Rule of Civil Procedure 56</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential

element of the nonmoving party's claim." *Id*. Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.  ANALYSIS

### A.  The Alleged Alteration of Plaintiff's Criminal Record

Moving Defendants contend that Plaintiff's Section 1983, Section 1985, and New Jersey Civil Rights Act claims stemming from the alleged alteration of Plaintiff's criminal history are barred by the two-year statute of limitations. ECF No. 6-2, Ocean County Br. at 1-3.; ECF No. 8, Alvarado Br., at 2. Moving Defendants asserts that, under the facts as alleged in Plaintiff's complaint, Plaintiff became aware of the error in his criminal record in October 2016. *Id*. Thus,

giving Plaintiff the benefit of the doubt that he learned of the issue at latest on October 31, 2016, he was required to initiate his lawsuit no later than October 31, 2018. *Id*.

In response, Plaintiff asserts that although he first became aware of the error in his criminal record "sometime before mid-November 2016," his criminal record was changed for a second time in May 2018, triggering a new statute of limitations. *See* ECF No. 9, Pl. SJ Opp Br. at 9-1.[9]

Congress has not codified a statute of limitations applicable to suits for federal civil rights claims and has instead "determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law." *Hardin v. Straub*, 490 U.S. 536, 538 (1989). Thus, the statute of limitations for Section 1983 claims is "governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, personal injury actions are subject to a two-year statute of limitation. *See* N.J. Stat. Ann. § 2A:14–2(a) ("every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued"). New Jersey state constitutional claims asserted under the New Jersey Civil Rights Act are also subject to the personal injury statute of limitations. *Waselik v. Twp. of Sparta*, No. 16-4969, 2017 WL 2213148, at *6 (D.N.J. May 18, 2017) ("NJCRA, like § 1983, is subject to [New Jersey's] general two-year personal injury statute of limitations.") (collecting cases).

---

[9] Plaintiff's Opposition to defendant Alvarado's Motion to Dismiss does not address Alvarado's arguments regarding the statute of limitations.

While state law governs the applicable statute of limitations, "[t]he accrual date of a Section 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *see also Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) ("[T]he accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period."). Federal law provides that "a cause of action accrues, and the state of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach*, 589 F.3d at 634 (internal citations and quotations omitted). "[A] cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). "Accrual does not depend on whether the potential claimant knew or should have known the injury constitutes a legal wrong." *Bayette v. Vanamburgh*, No. 19-13424, 2019 WL 6888408, at *2 (D.N.J. Dec. 17, 2019) (citing *Giles v. City of Philadelphia*, 542 F. App'x 121, 123 (3d Cir. 2013)). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002), the United States Supreme Court has observed that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Here, Counts One, Two, and Three of Plaintiff's Complaint stem from the alleged alteration of Plaintiff's criminal history. Plaintiff asserts that the error was deliberate and "[t]he Defendants, or some of them, conspired among themselves to violate Plaintiff's rights to due process" under both the federal and New Jersey constitution. Am. Compl. ¶¶46-51. As alleged, Plaintiff discovered the discrepancy in his criminal record in or around October 2016, after receiving the results of a background check. Furthermore, Plaintiff alleges that his attorney

advised the court of the error by letter dated November 15, 2016. Giving Plaintiff the benefit of all reasonable inferences, he was clearly aware of the error at the time, and thus, at the very latest, the statute of limitations began to run in mid-November 2016. Thus, the two-year of statute of limitations expired at the very latest in November 2018, several months before May 2019 when Plaintiff filed this lawsuit.

Furthermore, Plaintiff's argument that the May 2018 alteration to the Judgment of Conviction extended the limitations period is unavailing. As an initial matter, Plaintiff has not proffered any legal support for the proposition that the subsequent amendment to his criminal record triggered a new limitations period. Additionally, the May 2018 amendment was not a continuation of the allegedly unconstitutional conduct, but rather the remedy to Plaintiff's concerns.

In November 2016, the "final charges" section of Plaintiff's judgment of conviction was changed to reflect that Plaintiff had pled guilty to a violation of N.J. Stat. Ann 2C:35-5(b)(11)), rather than N.J. Stat. Ann 2C:35-5 (a)(1). *See* ECF No. 6-1, Ocean County SJ Br., Ex. A, 11/16/16 Change of Judgment of Conviction. However, at that time, count 2 of the "original charges" section still incorrectly reflected that Plaintiff had been charged with distribution of heroin, meth, or LSD rather than distribution of marijuana or hashish. *Compare id*. *with* ECF No. 6-1, Ocean County SJ Br., Ex. B. 5/15/18 Judgement of Conviction. In May 2018, the Judgment of Conviction was amended again to correctly reflect that Plaintiff was charged with distribution of marijuana or hashish. *Id*., Ex. B. The explanation provided in the amendment states that "[d]ue to a system error, the Description for Count 2 . . . as previously set forth under Original Charges was incorrect. Count 2 Description as set forth herein under Original Charges is correct." *Id*. Thus, the May 2018 modification corrected the remaining error in the judgment of conviction. To the extent

Plaintiff's constitutional rights may have been violated by the error in his judgment of conviction, that violation arose at the time the judgement of conviction was altered to include the mistake; not when that mistake was rectified.

Accordingly, Counts One, Two, and Three against all Defendants are dismissed with prejudice as barred by the statute of limitations.[10]

### B. The Allegedly Retaliatory Arrest

Plaintiff's remaining claims are civil rights claims against defendant Alvarado and "John Doe" police officers who were involved in the allegedly retaliatory July 2018 motor vehicle stop. Relying on *Heck v. Humphrey*, 512 U.S. 475, 486-487 (1994), Alvarado argues that because Plaintiff pled guilty to the charges stemming from the stop of his motor vehicle, Plaintiff is barred from filing a Section 1983 or state civil rights claim based on that interaction. Alvarado Br. at 5.

---

[10] Even assuming Plaintiff's claims were not subject to dismissal based on the statute of limitations, Plaintiff's claims against Defendant Alvarado would also likely be subject to dismissal on the merits. The Third Circuit has held that "a[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(first alteration in original); *see also Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (explaining that a civil rights complaint is adequate where it states the conduct, time, place and persons responsible). Here, Plaintiff has not alleged that Defendant Alvarado had any personal involvement in the alteration of Plaintiff's criminal records, nor does it appear that Alvarado had any involvement in the underlying 2012 arrest or conviction. Alvarado is a Brick Township police officer, and Plaintiff alleges that the 2012 arrest was effectuated by Lacey Township police. *See* Am. Compl. ¶6. Plaintiff's claim against Ocean County is similarly unavailing, because a county may not be subject to suit under Section 1983 simply because it employs wrongdoers. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 688–90 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. Plaintiff has not alleged a *Monell* claim against Ocean County.

In that regard, Alvarado asserts that by failing to challenge the legality of the motor vehicle stop or his arrest, during the underlying criminal proceeding, Plaintiff has conceded the existence of probable cause. *Id.*; *see also* ECF No. 16, Alvarado Reply Br. at 1-2.

Plaintiff does not address Alvarado's arguments that the guilty plea precludes this civil rights suit but contends that "if the Court is disposed to find his arguments about probable cause for the stop and arrest being irrelevant due to Plaintiff's subsequent guilty plea, the claims should still proceed for violation of his First Amendment rights." Pl. Opp. Alvarado MTD. at. 2.

Under both Section 1983 and the New Jersey Civil Rights Act, a plaintiff must prove the defendant, under the color of state law, deprived him of a constitutional or statutory right. *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation."). Here, the parties largely dispute whether Alvarado' alleged conduct constituted a constitutional violation.

### i. Counts Four and Five – State and Federal Due Process Violations

Plaintiff alleges that the July 16, 2018 motor vehicle stop violated both his due process rights and his right to freedom of speech. Although Plaintiff's claim in this regard is styled as an alleged procedural due process violation, Plaintiff challenges the basis for the motor vehicle stop. Accordingly, the Court construes Plaintiff's Complaint as asserting a Fourth Amendment violation only, rather than a Due Process violation.[11]

---

[11] Plaintiff's Complaint is far from a model of clarity. While the section of the Complaint describing the July 16, 2018 motor stop is titled "Plaintiff's Retaliatory Arrest," however, in both Counts Four and Five Plaintiff alleges "[b]y stopping Plaintiff on July 16, 2018 in retaliation for his making an IA complaint, and without probable cause, Defendant Alvarado and John Doe Defendants violated his right to procedural due process." Am. Compl. ¶¶53,55. Similarly in

As an initial matter, Alvarado's assertion that Plaintiff's claims are barred by virtue of his guilty plea are unavailing. In *Heck v. Humphrey*, the United States Supreme Court held that if the success of a previously convicted plaintiff's section 1983 claim "would necessarily imply the invalidity of his conviction or sentence," the plaintiff may only bring his claim if he "can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994). The *Heck* analysis is a two-part inquiry*:* (1) whether a judgment in favor of plaintiff would necessarily imply the invalidity of the conviction; and (2) whether the conviction has already been invalidated. *Id.* However *Heck* does not bar all Fourth Amendment claims. *Id.* at 486-87. If the district court determines "that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487; *see also Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 223-24 (3d Cir. 2016) ("*Heck* bars only claims which 'seek[] to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful.'" (alteration in original) (quoting *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998))). For example, in *Heck*, the Supreme Court explained that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." 512 U.S. 478 n.7. Accordingly, *Heck* "requires District Courts to

---

Counts Six and Seven Plaintiff asserts "[b]y stopping Plaintiff on July 16, 2018 in retaliation for his making an IA complaint, and without probable cause, Defendant Alvarado and John Doe Defendants violated his right to petition the government for redress of his grievances." Accordingly, it appears that Plaintiff alleges a claim of a baseless stop, rather than a false arrest or excessive force claim.

determine whether each claim -- if successful -- would imply the invalidity of the conviction or sentence." *Strunk,* 674 F. App'x. at 224.

To state a claim for violation of the Fourth Amendment based on the motor vehicle stop on July 16, 2018, Plaintiff must allege that he was unlawfully seized at the time of the stop. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). The Fourth Amendment also allows an officer to conduct "a brief investigatory stop when he has reasonable, articulable, and individualized suspicion that criminal activity is afoot." *United States v. Lowe*, 791 F.3d 424, 434 (3d Cir. 2015).

Here, Plaintiff's civil rights claims stem from an allegedly illegal seizure, in the form of a motor vehicle stop, and thus, it does not appear that the claim "necessarily implies" the invalidity of the underlying conviction. *See Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir. 1998) (finding that plaintiff's claims based on officers' alleged lack of probable cause for stop "are not the type of claims contemplated by the Court in *Heck*" because "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest").

Plaintiff's claims solely involve the police officers' basis for the motor vehicle stop, and his conviction presumably stems from marijuana and drug paraphernalia discovered on Plaintiff's person or in Plaintiff's vehicle during the traffic stop. Because the instant lawsuit only requires

the Court to ascertain the validity of the traffic stop, such a determination will not impact the validity of Plaintiff's conviction. In a civil rights suit, doctrines such as "fruit of the poisonous tree" and the "exclusionary rule" are inapplicable, and therefore, in analyzing whether Plaintiff's constitutional rights were violated by an unlawful stop, the Court need not reach the ultimate questions of whether the evidence seized during the traffic stop should have been suppressed or the ultimate validity of Plaintiff's conviction. *See Hector v. Watt*, 235 F.3d 154, 158 (3d Cir. 2000) (explaining that the exclusionary rule "is not a personal constitutional right of the party aggrieved" and thus, victims of such violations "cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution" (internal citations and quotation marks omitted)); *Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 903 (E.D. Pa. 2017)("[t]he 'fruit of the poisonous tree' doctrine likewise cannot be used by a plaintiff in a civil suit to avoid consideration of evidence obtained through police misconduct") Accordingly, Plaintiff's civil rights claim does not impugn the validity of his guilty plea or conviction and the *Heck* bar does not apply.

Having determined that *Heck* does not bar Plaintiff's Section 1983 claim or state civil rights claims, I find that Plaintiff has adequately alleged a claim of unlawful seizure in violation of the Fourth Amendment. Here, Plaintiff alleges that within a week of filing an internal affairs complaint against the Brick Township Police Department, Alvarado and other Brick police officers pulled him over, without probable cause or reasonable suspicion. Defendant has not challenged those allegations in any way.[12] At this motion to dismiss phase, the Court must take Plaintiff's

---

[12]     Defendant's only argument in this regard is that Plaintiff, by pleading guilty to the charges against him, conceded the existence of probable cause and cannot allege a Section 1983 or New Jersey Civil Rights claim. As explained, *supra*, while Alvarado's argument might have succeeded if Plaintiff were asserting a claim of false arrest, *Heck* cannot bar Plaintiff's illegal

factual allegations that he was stopped without probable cause or reasonable suspicion as true. Accordingly, Alvarado's motion to dismiss as to counts Four and Five is denied.

### i. Counts Six and Seven – State and Federal Free Speech Violations

As a general matter, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)). To state a First Amendment claim, a plaintiff must allege: (1) conduct or speech protected by the First Amendment; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action. *Thomas v. Indep. Twp*, 463 F.3d 285, 296 (3d Cir. 2006).

Alvarado relies solely on the *Heck* bar and related arguments that by pleading guilty to the charges stemming from the stop, Plaintiff has conceded the existence of probable cause. Alvarado Br. at 4-6; Alvarado Reply Br., at 1-2. Again, Alvarado's argument that Plaintiff's free speech retaliation claims are barred by *Heck* is unavailing for the reasons outlined above.[13] Moreover,

---

seizure claim. To the extent Alvarado may have other viable defenses, *e.g.* qualified immunity, Alvarado has leave to file a second motion to dismiss within forty-five days of the accompanying Order.

[13]     Alvarado appears to construes Plaintiff's claim as one of false arrest. *See* Alvarado Br. at 4 ("Defendant Alvarado is entitled to the dismissal of the Fourth and Sixth Counts because Defendants had probable cause to believe that a crime had been committed and to arrest Plaintiff as indicated by his guilty plea."); Alvarado Reply Br. at 1 ("Plaintiff essentially argues that the Amended Complaint should not be dismissed because the Plaintiff's arrest was allegedly in retaliation for Plaintiff having made an internal affairs complaint against Defendant Alvarado and others."). If Plaintiff were raising a false arrest claim, then Alvarado's argument in this regard would be correct, however, as explained, *supra*, Plaintiff's Complaint ostensibly bases its claims on the propriety of the stop, not the arrest. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).

Plaintiff has adequately alleged facts suggesting First Amendment retaliation. First, Plaintiff's internal affairs complaint constitutes protected "speech." As the Third Circuit has explained, "[t]he Supreme Court has clearly held that prosecution of a citizen in retaliation 'for nonprovocatively voicing his objection' to police conduct impermissibly punishes constitutionally protected speech." *Losch v. Borough of Parksburg, Pa.*, 736 F.2d 903, 910 (3d Cir.1984) (quoting *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973)); *see also Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d 660, 674 (E.D. Pa. 2010) (finding that plaintiff's allegation that criminal charges were brought against him "as a direct consequence of the filing" of an internal affairs complaint against police officers was adequately alleged a claim of First Amendment retaliation). Accordingly, Plaintiff has adequately alleged the first prong of a First Amendment retaliation claim.

Second, Plaintiff has sufficiently alleged a retaliatory action by Alvarado, namely, that he was stopped by without reasonable suspicion or probable cause. The threshold for conduct "sufficient to deter a person of ordinary firmness" from exercising his or her First Amendment rights is a "low standard," which merely requires a plaintiff demonstrate that the retaliatory conduct by the defendant was more than *de minimis*." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006). Being subjected to an unwarranted motor vehicle stop by the police would certainly constitute a retaliatory action. Thus, Plaintiff has adequately alleged the second prong of a First Amendment retaliation claim.

Finally, Plaintiff has alleged a causal nexus between his protected activity and Alvarado's actions, because during the motor vehicle stop Alvarado allegedly "pointed his gun at Plaintiff's

---

("The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim.").

head, and said '[t]his is what happens when you make an IA complaint'" and repeatedly said, "you know what this is about." Am. Compl. ¶¶37, 40. Assuming, as the Court must at this motion to dismiss phase, that Alvarado actually uttered those statements, such an allegation would constitute direct evidence of Alvarado's retaliatory intent. Accordingly, Alvarado's motion to dismiss Counts Seven and Eight is denied.

### i. Counts Eight and Nine – Cruel and Unusual Punishment

Alvarado asserts that Plaintiff's claim regarding the alleged violation of Plaintiff's right to be free from cruel and unusual punishment is also subject to dismissal because Plaintiff has not alleged that Alvarado had any involvement in the alleged decision to deny Plaintiff prompt medical care. Alvarado Br. at 2,7. In that regard, Alvarado asserts that Plaintiff's Complaint does not allege that Alvarado "was one of the officers that Plaintiff, while in custody, allegedly 'repeatedly told' that he was 'hypo-glycemic' or that he was involved in the imposition of the cruel and unusual punishment." *Id*. Furthermore, Alvarado asserts that Plaintiff's cruel and unusual punishment claims fail as a matter of law because Plaintiff received immediate medical treatment and was transported to a hospital. *Id*. at 7.

As an initial matter, Plaintiff cannot assert a claim for cruel and unusual punishment based on his treatment while in the Brick Township Police Department because he had not yet been convicted of a crime. "While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983)). Accordingly, because Plaintiff was an arrestee, not a convicted prisoner, his claims arise under the Fourteenth Amendment's due process clause. *Id*. (explaining that the Fourteenth

Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," and thus, a pre-trial detainee may bring a Fourteenth Amendment claim for inadequate medical care).  In order to allege a violation of the Fourteenth Amendment right to adequate medical care, however, the same standard applies as it would to an Eight Amendment claim.  *Natale*, 318 F.3d at 582.  Plaintiff must allege: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  *Id*.

Plaintiff does not directly refute Alvarado's contention that he was not directly involved in the conduct underlying Counts Eight and Nine; instead Plaintiff merely contends that "while Counts Eight and Nine may or may not, involve Defendant Alvarado they certainly involve Brick officers."  Pl. MTD Op. Br. at 3.  However, the mere fact that *other* Brick Township police officers or employees may have been involved in the alleged decision to deny Plaintiff immediate medical care, is insufficient to state a claim against Alvarado.  *See Evancho*, 423 F.3d at 353 ("a[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").  Plaintiff has not alleged that Alvarado was present at the Brick Township police station when Plaintiff's hypoglycemic episode occurred or that Alvarado had any direct involvement in the decision-making process regarding Plaintiff's medical treatment.  Since Plaintiff has not alleged that Alvarado was involved in or directed the alleged constitutional violation, Plaintiff's claims against him may be dismissed on that basis, alone.

Even assuming Alvarado was directly involved in the decision to deny Plaintiff medical care, Plaintiff's allegations do not satisfy the standard for a medical mistreatment claim.  First, it

is not clear that Plaintiff's hypoglycemia constitutes "a serious medical need." A medical need is considered serious "if it is one a physician would diagnose as requiring treatment or one that a lay person would easily recognize as needing a doctor's attention." *Monmouth County Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J.1979)). Additionally, a medical need is considered serious if denial or delay of treatment causes "unnecessary and wanton infliction of pain" or "a life-long handicap, or permanent loss." *Id.*; *see also Mohorcic v. Hogue*, No. 11–575, 2013 WL 6118693, at *3–4 (W.D.Pa. Nov. 21, 2013) (finding that plaintiff failed to demonstrate an objectively serious medical need although plaintiff alleged that received no medical care after he tripped, hit his head on a concrete wall, temporarily lost consciousness, and had "blurry vision" upon regaining consciousness, but plaintiff did not allege that he "suffered any lasting or permanent injuries as a result of not receiving medical treatment"). Here, Plaintiff simply alleges that he informed the officers that he was hypoglycemic, and does not allege that he had been diagnosed with hypoglycemia by a medical professional, or that the symptoms of his condition were obvious and would have been easily recognized as needing immediate medical attention, or sought to explain the extent and severity of his medical condition, in any fashion. Nor has Plaintiff alleged that he suffered lasting medical consequences because of the police officers' alleged decision to delay seeking treatment for Plaintiff's hypoglycemic episode.

More importantly, Plaintiff has not adequately alleged that the officers acted with "deliberate indifference" to Plaintiff's medical needs. The Third Circuit has explained that the deliberate indifference standard is satisfied

> [W]hen prison officials 1) deny reasonable requests for
> medical treatment, and the denial exposes the
> [arrestee] to undue suffering or the threat of tangible

> residual injury, 2) delay necessary medical treatment
> for non-medical reasons, or 3) prevent an [arrestee]
> from receiving recommended treatment for serious
> medical needs, or deny access to a physician capable
> of evaluating the need for treatment.

*Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007). To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir.2009) (citing *Estell*e, 429 U.S. at 104–05 (1976)). That standard requires "subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk" to an arrestee's health and consciously disregard that risk in order to be held liable. *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" deliberate indifference. *Estelle*, 429 U.S. at 105–06.

Here, Plaintiff has not – and could not -- allege that he was wholly denied medical treatment. Plaintiff's Complaint avers that he was taken to Brick Police Department, handcuffed and placed in a cell and "[w]hile in the cell, Plaintiff repeatedly told Brick officers that he was/is hypo- glycemic, and that his sugar was dropping. He received no response and lost consciousness. The EMTs were called, and gave Plaintiff instant glucose to revive him; as he regained consciousness, his blood pressure was 260 over 140." *Id*. at ¶41. Thereafter, Plaintiff was brought to Ocean Medical Center and provided further medical treatment before returning to the police station. *Id.* Plaintiff's claim alleges delayed or inadequate medical care; however, Plaintiff has not alleged any details about how long he complained of his hypoglycemia before he lost consciousness, or how long it took the officers to summon the EMTs. As pled, Plaintiff's allegations do not come close to suggesting that his condition was so dire that the police officers'

failure to immediately obtain medical attention for Plaintiff in response to his initial complaints exposed him to undue suffering or the tangible threat of serious injury. Rather, Plaintiff's own allegations suggest that the officers' delayed response to Plaintiff's hypoglycemic episode of indicative of negligence at best, but "[m]ere negligence in diagnosing or treating a medical condition ... is not a constitutional violation." *Tillery v. Owens*, 719 F. Supp. 1256, 1308 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990 ) (quoting *White v. Farrier*, 849 F.2d 322 (8th Cir. 1988)). Ultimately, Plaintiff's allegations arise to a difference of opinion as to the exact moment when the police department should have sought medical assistance, and thus Plaintiff's Complaint fails to state a claim for deprivation of medical treatment.

Counts Eight and Nine against Alvarado are dismissed without prejudice. If during the course of discovery, Plaintiff becomes aware that Alvarado was present at the police station during Plaintiff's hypoglycemic episode, or personally involved in the alleged decision to deny Plaintiff immediate medical treatment, Plaintiff may file a motion for leave to file an amended complaint.

## C. <u>CONCLUSION</u>

For the reasons set forth above, Counts One, Two, and Three, Plaintiff's civil rights claims stemming from the error in his criminal history, are dismissed with prejudice against Moving Defendants as barred by the statute of limitations. Accordingly, summary judgment in favor of Ocean County is **GRANTED** on those counts and Ocean County is dismissed as a defendant. Alvarado's Motion to Dismiss is **GRANTED IN PART and DENIED in PART**. Counts Eight and Nine, Plaintiff's medical mistreatment claims, are dismissed without prejudice, and Alvarado's Motion as to Counts Four, Five, Six and Seven is **DENIED**.

Date: March 27, 2020.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson

25

U.S. Chief District Judge